### THE TOWN OF TROY *v.* GEORGE W. AIKEN.

#### *Case. Selectmen.*

The defendant was one of the selectmen of the plaintiff town. It became necessary for the selectmen to raise $400 to use in the business of the town, and for that purpose they executed two negotiable promissory notes in their official capacity, for $400 each, payable to different banks, as they did not know which bank would discount, and delivered them to the defendant to get one of them discounted, which he did at the bank to which it was payable. The other selectmen thereupon called upon the defendant to give up the other note to them, to be destroyed, whereupon the defendant informed them that he had destroyed it, which was false. Afterwards, and while he was selectman as aforesaid, the defendant, with intent to defraud the town, negotiated said last mentioned note to one R., and obtained the money on it, and appropriated it to his own use; and the town subsequently paid and took up said note. *Held,* that the defendant was liable to the town in an action on the case, for the damage it had sustained by his wrongful act.

CASE. The declaration was as follows:

" For that heretofore, to wit, on the first Tuesday of March, 1869, the defendant, and D. W. Porter, and S. B. Hammond,

were, at a legal meeting of the legal voters of said town of Troy, legally warned and held at said Troy on the day last aforesaid, elected selectmen of said town for the year then next ensuing; and the said defendant, and the said Porter and Hammond, immediately thereafter proceeded to transact the necessary business of said town as the selectmen thereof, and in transacting and managing said business, it became necessary, on the 20th day of said March, for said defendant, Porter, and Hammond, selectmen as aforesaid, to raise and procure the sum of four hundred dollars, to be used in and about the business of said town; and on said 20th day of March, the defendant, Porter, and Hammond, selectmen as aforesaid, for the purpose of raising said sum of money for the use aforesaid, drew up and signed in their official capacity, two notes, each for the sum of four hundred dollars, one made payable to the National Bank of Derby Line, or order, in ninety days from the date thereof, and the other made payable to the President, Directors and Company of the Bank of Orleans, or bearer, in ninety days from the date of discount thereof, both of which said notes were placed in the hands of the said defendant for the purposes following, to wit,—the defendant was to procure one of said notes discounted, and, as it was not known which of the aforesaid banks would discount one of said notes, the defendant was to try one of said banks, and if he could not procure the discount of one of said notes at the bank first applied to, then he was to apply to the other of said banks to discount one of said notes. And the said defendant took said notes, and soon afterwards, to wit, on the 22d day of said March, procured one of them, to wit, the one made payable to the President, Directors and Company of the Bank of Orleans, discounted at the Irasburgh National Bank of Orleans, of which fact the defendant immediately thereafter gave the said Porter and Hammond notice, who thereupon, in their capacity of selectmen as aforesaid, immediately called upon the defendant for the said note made payable to the National Bank of Derby Line, whereupon the defendant informed the said Porter and Hammond, selectmen as aforesaid, that he had destroyed said last-mentioned note. And the plaintiff avers, that the defendant, with intent to deceive and defraud the plaintiff of its money, had not destroyed said last mentioned note, but on the contrary thereof, then had the same in his possession; and that the said defendant thereafterwards, to wit, on the 4th day of May, 1869, at Newport, in the county of Orleans, with intent to defraud the plaintiff, and without right or authority, did negotiate and pass to one Lucius Robinson, of Newport aforesaid, said last-mentioned

note, without the knowledge or consent of the plaintiff, or of the said Porter and Hammond, and did then and there procure the said Robinson to discount said last mentioned note, and did then and there, without right or authority, and with intent to defraud the plaintiff, convert the proceeds of the discount of said last mentioned note, so received from the said Robinson, to his own use.

And the plaintiff further avers, that afterwards, to wit, on the 13th day of November, 1869, the plaintiff was compelled to pay and take up said last-mentioned note, and to pay the interest due thereon after the maturity thereof. And that the plaintiff has been put to great trouble and expense of money to pay said last-mentioned note," &c.

General demurrer to the declaration, and joinder in demurrer. The court, at the September term, 1872, Ross, J., presiding, overruled the demurrer, and rendered judgment for the plaintiff. Exceptions by the defendant.

*H. C. Wilson* and *Benton, Hill & Cross*, for the defendant.

The declaration counts on the wrongful act of the defendant in negotiating and passing the note to Robinson. The ground of damage is, that by means of that proceeding, the town became compelled to pay the note to Robinson. To constitute a good cause of action, the declaration should set forth a state of facts which made the payment to Robinson obligatory upon the town, else the transaction, so far as the town is concerned, is, at most, *damnum absque injuria*. A voluntary payment, by the town, although it might possibly be a sufficient ground to maintain an action of assumpsit, is no sufficient foundation for this action of tort. The averment that the plaintiff was compelled to pay the note, is not sufficient.

Even if the note in question had been that of a private individual, or a mercantile corporation, such as could make what the law recognizes as commercial paper, the declaration would have been insufficient, because it does not show that Robinson was an innocent holder.

The declaration is also defective, in that it not only lacks the averments necessary to protect innocent holders of mercantile paper, but it shows affirmatively that the paper was such as could not, under any circumstances, be chargeable upon the town as

negotiated. Towns are only *quasi* corporations, with limited powers. *Hopper* v. *Brown*, 13 Ohio, 3. As such, they cannot issue mercantile paper, such as will be protected in the hands of even innocent holders. That towns may contract debts in the performance of their legitimate functions, is not now an open question. Whether they may borrow money, as distinguished from contracting debts for the very things they purchase, has been questioned by very high authority. SELDEN, J., in *Ketchum* v. *Buffalo et al.* 14 N. Y. 366 ; *Rich* v. *Erroll*, 51 N. H. 350. Concede, however, that they may do so, the effect to be given to the paper evidence of debt of a municipal corporation, has been a matter of some conflicting opinions in this state. *Dalrymple* v. *Whitingham*, 26 Vt. 345 ; *Hyde et al.* v. *County of Franklin*, 27 Vt. 186 ; *Taft* v. *Pittsford*, 28 Vt. 286.

The only way these authorities can be reconciled is, by holding that such orders, if negotiable at all, are only so in the qualified sense that overdue notes and bills of exchange are negotiable ; and although actions on them may be brought in the name of the holder, they are yet subject to the same defense as if sued in the name of the original payee.

The note passed to Robinson was not such paper as could, from the facts stated in the declaration, be enforced against the town, and, consequently, the payment by the town was voluntary.

Whether, if the defendant was compelled to set up such matter as defense, by way of plea or otherwise, he might not be estopped from doing so, cannot be here brought in question, because these facts appear as a material and necessary part of the plaintiff's own case.

*W. D. Crane*, for the plaintiff.

It was the duty of the defendant, upon the request of the other two selectmen, to surrender the note which was not discounted, that it might be destroyed. It makes no difference whether the note was valid in the hands of the holder or not ; it was made by the defendant and the other selectmen, who undoubtedly supposed it valid, and was paid by the town. The town had a right to pay it, and it does not lie in the defendant's mouth to complain that it

did. He cannot be allowed to say that the town shall not honor paper made by its own officers, on its own behalf.

It may be claimed that the defendant did not negotiate the note in his capacity of selectman, because it is not so alleged in the declaration ; and hence, that he is not liable to the town for the money obtained upon it. But we submit that the declaration does show that the defendant negotiated said note in his official capacity of selectman. But suppose it does not so show, and that he negotiated it in his private capacity ; his defense is not strengthened. The fact that he executed the note, and received it into his possession, in his official capacity, still remains. He had no better right to negotiate the note and appropriate the funds, in his private capacity, than he had in his official capacity. He is under the same liability to the plaintiff in either case, having executed the note and received it into his possession in his official capacity. His relation to the town in the matter, is the same as exists between all agents and their principals, when the agent wrongfully converts either the goods or funds of the principal ; and he is under the same liabilities, and to the same extent.

The opinion of the court was delivered by

ROYCE, J. The notes which the defendant and Porter and Hammond executed as selectmen of the town of Troy, were executed by them as the agents and servants of the town ; and in the negotiation and sale of the note by the defendant to Robinson, he acted as the agent of the town. The defendant now seeks to avoid all legal responsibility to his principal, upon the novel theory that his principal had no legal authority to execute the note upon which he procured the money. As between principal and agent, moneys received by the agent upon securities executed by, and belonging to, the principal, are the property of the principal, irrespective of the question of the legal liability of the principal to the holder of the securities. Hence, in passing upon the legal sufficiency of the declaration, it does not become necessary to decide the question made in argument as to the right of towns to issue negotiable notes. The retention of the note by the defendant after the purpose for which it had been delivered to

him had been accomplished, was wrongful ; and it stands admitted, that when Porter and Hammond called upon him for it, he informed them that he had destroyed it ; and that afterwards, with intent to defraud the plaintiff, and without right or authority, he negotiated and passed the note and received the avails. These admissions, in connection with the fact that the money was obtained upon a security that belonged to the plaintiff, and upon its credit, is conclusive against the right of the defendant to retain it, and of his liability to the plaintiff under this declaration.

The declaration is adjudged sufficient, judgment reversed, *pro forma*, and the defendant may replead, upon payment of plaintiff's costs pending the demurrer, and taking none.